United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ANNAMARIA M, a minor,              No   C  03-0101  VRW
     by her next friend,
12   ANTOINETTE M,                           ORDER

13              Plaintiff,

14

15              v

16   NAPA VALLEY UNIFIED SCHOOL
     DISTRICT, et al,
17
                Defendants.
18   _____/

19

20        Plaintiff Annamaria M, through her mother, Antoinette M,

21   brings this federal civil rights action with supplemental state law

22   claims for relief from defendants' alleged failure to protect

23   plaintiff from the harassment of her school classmates.

24   Plaintiff's second amended complaint (SAC) names as defendants the

25   Napa Valley Unified School District (NVUSD) and David Brown, Ron

26   Goldberg, Karen Chase, Kathleen Kernberger, Kathleen Daugherty and

27   Mary Myers (collectively, the "individual defendants".  Doc #21

28   (SAC).  Defendants move to dismiss the SAC pursuant to FRCP

12(b)(6).[1]  Doc #35 (MTD).  In the alternative, defendants move for a more definite statement pursuant to FRCP 12(e).  Further, defendants move to strike certain allegations pursuant to FRCP 12(f).  For reasons discussed below, defendants' motion is GRANTED IN PART and DENIED IN PART.

I

The court accepts the following allegations as true for purposes of defendants' motion:

Annamaria was home-schooled until September 2001, when, at Annamaria's request, her parents reluctantly agreed to enroll her in the eighth grade at Redwood Middle School ("Redwood").  SAC ¶¶16-17.  Not long thereafter it became apparent that Annamaria was unable to keep up with her classmates academically.  Id ¶19.  On November 13, 2001, at a "Pupil Study Team Meeting," defendants Daugherty (Redwood's principal), Kernberger, Goldberg, Chase and Myers (all of whom were teachers at Redwood) convinced Annamaria and her parents that Annamaria should be transferred into "special classes" that better suited her academic level and provided more individualized attention.  Id ¶¶20-25.

The students in Annamaria's new class were unmotivated, inattentive and disruptive.  Id ¶¶28-29.  They frequently acted out and the teachers just ignored them.  Id ¶29.  Thus, despite assurances that the classes were "safe" Annamaria had been transferred to a class for "difficult students" with "behavioral

---

[1]  The SAC also names as defendants the two alleged harassers, Gerardo M and Oscar S, both minors; they are not parties to the present motions.  All references herein to "defendants" encompass only NVUSD and the individual defendants but not Gerardo or Oscar.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1   problems." Id ¶¶23, 28, 30.

2   Among the students in Annamaria's new classes were

3   Gerardo M and Oscar S.  Within one week of Annamaria's arrival,

4   Gerardo and Oscar began to harass Annamaria sexually.  Gerardo and

5   Oscar repeatedly rubbed Annamaria's buttocks with their feet while

6   they made lewd comments such as "you are a slut," "you want to fuck

7   me?," "give me head" and "let me touch your ass."  Id ¶¶34-35.

8   They would gesture that they wanted sexual favors from Annamaria

9   by, for example, grabbing their crotches and asking Annamaria to

10  have sex with them.  Id ¶¶36-37.  The harassing conduct "would

11  occur each and every day" during "almost all class periods" and

12  throughout "the school grounds."  Id ¶32.  Although the harassing

13  conduct occurred on the school campus generally, the in-class

14  harassment occurred in the classrooms of Mrs Kernberger and Mrs

15  Meyers.  Id ¶31.

16  "During the months preceding" January 2001, Annamaria

17  brought Oscar and Gerardo's misconduct to the attention of Mrs

18  Kernberger and Mrs Myers "on several occasions."  Id ¶38.  Although

19  Mrs Kernberger initially (but "on several occasions") told

20  Annamaria simply to "ignore it," she later moved Annamaria to the

21  front of the class to separate her from Gerardo and Oscar.  Id.

22  When Gerardo and Oscar continued to harass Annamaria, Mrs

23  Kernberger began sending them to Principal Daugherty's office.  Id

24  ¶39.  Similarly, Mrs Myers sent Gerardo and Oscar to Principal

25  Daugherty's office when she observed them harassing Annamaria.  Id

26  ¶42.  The repeated trips to the principal's office, however, did

27  not curb Gerardo and Oscar's misbehavior.  Id ¶¶40, 43.

28  //

3

United States District Court

For the Northern District of California

Antoinette "called the schools repeatedly over several weeks" hoping to stimulate an investigation. Id ¶44. Antoinette was "shuttled from person to person in the schools." Id ¶50. Eventually, Antoinette wrote a letter to "the schools" on January 14, 2002, describing the situation. Id ¶46. The harassment took its toll on Annamaria, who lost 22 pounds in two months, became "fearful of school and afraid in general" and attempted suicide on one occasion. Id ¶¶45, 61. At some point, Annamaria stopped going to school because of Gerardo and Oscar. Principal Daugherty called Antoinette, demanded that Annamaria return to school and offered to place Annamaria in another class. Id ¶¶54, 56. On January 16, 2002, "the schools" called the police and Gerardo and Oscar were detained. Id ¶59.

II

Rule 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988). Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations." Swierkiewicz v Sorema NA, 534 US 506, 515 (2002) (rejecting heightened pleading standards); see also Schmier v United States Court of Appeals for the Ninth Circuit, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).

The court must construe the complaint in the light most favorable to the plaintiff, taking the allegations as true and drawing all reasonable inferences in the plaintiff's favor. Knievel v ESPN, 393 F3d 1068, 1072 (9th Cir 2005). But "the court

4

[is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v Golden State Warriors, 266 F3d 979, 988 (9th Cir 2001) (citing Clegg v Cult Awareness Network, 18 F3d 752, 754-55 (9th Cir 1994)).  An action may be dismissed for failure to state a claim only if it "appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Doe v United States, 419 F3d 1058, 1062 (9th Cir 2005).

## III

### *Title IX*

Annamaria's first claim alleges sexual discrimination and harassment in violation of Title IX of the Education Amendments of 1972, 20 USC § 1681 et seq, which in pertinent part provides:  "No person * * * shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," id § 1681(a).

The Supreme Court has held that educational institutions that receive federal funding "may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." Davis v Monroe County Bd of Educ, 526 US 629, 646-47 (1999).  A recipient's liability for peer harassment under Title IX is limited to circumstances where (1) the student is subjected to harassment that is "so severe, pervasive, and objectively offensive that it

United States District Court

For the Northern District of California

denies its victims the equal access to education that Title IX is designed to protect," (2) a person with authority to take steps to remedy the harassment has actual notice or knowledge of harassment and (3) that person is deliberately indifferent to the harassment. Id at 652; see also Gebser v Lago Vista Indep Sch Dist, 524 US 274, 290 (1998).

Although the SAC asserts the Title IX claim against all defendants, Annamaria now concedes that the Title IX claim can be asserted only against NVUSD. Accordingly, Annamaria's first claim is DISMISSED WITH PREJUDICE as to the individual defendants. The court turns to NVUSD's arguments for dismissal.

A

NVUSD first argues that the SAC does not allege that Annamaria was subjected to harassment so severe that it effectively denied her equal access to education. The court is unpersuaded.

The SAC alleges that Annamaria was harassed by Oscar and Gerardo throughout "almost all of the school class periods," "each and every day," for a period beginning no earlier than November 13, 2001 (the date of the "Pupil Study Team Meeting"), and January 16, 2002 (the date that Gerardo and Oscar were detained). It is appropriate to take judicial notice of public schools' adjournment for approximately two weeks during the winter holidays. Thus, drawing all reasonable inferences in Annamaria's favor, the alleged harassment took place for a period of approximately 6-7 weeks. The harassment so affected Annamaria that she lost 22 pounds, dropped out of school and attempted suicide. These are not the "simple acts of teasing and name-calling" that are insufficient to subject

United States District Court

For the Northern District of California

a school district to Title IX liability.  <u>Davis</u>, 526 US at 652. Annamaria has sufficiently alleged peer harassment of the severity and pervasiveness against which Title IX seeks to protect.

B

NVUSD next argues that Annamaria has not alleged deliberate indifference, but rather that defendants took reasonable measures to curtail Gerardo and Oscar's harassing conduct.

1

As an initial matter, the parties disagree whether teachers' acts or omissions can trigger Title IX liability. Annamaria argues that the inaction of a teacher can give rise to Title IX liability, relying primarily upon <u>Nicole M v Martinez Unified School District</u>, 964 F Supp 1369 (ND Cal 1997).

In <u>Nicole M</u>, Judge Patel decided ── as a matter of first impression in the Ninth Circuit and in the pre-<u>Gebser</u>/<u>Davis</u> Title IX landscape ── that peer harassment is actionable under Title IX. As one basis for her decision, Judge Patel reasoned that a "teacher whose agency status is sufficient to hold the district liable for her harassment of a student * * * stands in no different position when she knows * * * of peer sexual harassment."  Id at 1378. Significantly, no teacher was named as a defendant in <u>Nicole M</u>, which relegates this language to the status of *obiter dicta*.

Of more fundamental importance, however, Judge Patel's rationale was explicitly based on agency principles.  Intervening Supreme Court authority makes clear that Title IX liability cannot be imputed to a school district merely on the basis of agency

7

**United States District Court**

For the Northern District of California

principles.  See <u>Gebser</u>, 524 US at 283; see also <u>Davis</u>, 526 US at 640, 642.  Rather, Title IX liability can be predicated only upon the acts or omissions of "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination."  <u>Gebser</u>, 524 US at 290.

Unsurprisingly, then, the Eleventh Circuit has recognized that it is "an open question" whether a teacher's deliberate indifference can trigger Title IX liability after <u>Davis</u>.  <u>Hawkins v Sarasota County Sch Bd</u>, 322 F3d 1279, 1286 (11th Cir 2003).  The Tenth Circuit has opined that when peer harassment occurs on school grounds, "teachers may well possess the requisite control necessary to take corrective action to end the discrimination."  <u>Murell v Sch Dist No 1</u>, 186 F3d 1238, 1248 (10th Cir 1999).  Still, the Tenth Circuit acknowledged that "[b]ecause officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry."  Id at 1247.  "In order to answer the question, it would be necessary to examine how [California] law organizes its public schools, the authority and responsibility granted by state law to * * * teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case."  <u>Hawkins</u>, 322 F3d at 1286.

Although later in these proceedings it might be established that Mrs Kernberger and Mrs Myers lacked authority meaningfully to address Gerardo and Oscar's harassing conduct, the court concludes that, read in the light most favorable to Annamaria, the SAC alleges the teachers had such authority.

United States District Court

For the Northern District of California

**2**

Once school officials have actual notice of sexual harassment, they are under a duty to act to curtail the harassment. Davis, 526 US at 652.  But this "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary actions."  Id at 648.  On the contrary, courts should find deliberate indifference "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  Id.

Still, one of the "known circumstances" that must be considered when addressing the reasonableness of the recipient's action is the known effectiveness of the chosen remedial action. "Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances."  Vance v Spencer County Pub Sch Dist, 231 F3d 253, 260-61 (6th Cir 2000); see also Flores v Morgan Hill Unif Sch Dist, 324 F3d 1130, 1135-36 (9th Cir 2003) (relying upon Vance); Wills v Brown University, 184 F3d 20, 25 (1st Cir 1999) ("If the institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment.  Of course, if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability." (citation omitted)); Jones v Indiana Area Sch Dist, 397 F Supp 2d 628, 645-46 (WD Pa 2005) (denying summary judgment where the district continued simply "talking to" the perpetrating student long after it became apparent that such action was ineffective).

United States District Court

For the Northern District of California

In this regard, the SAC alleges that Gerardo and Oscar were sent to Principal Daugherty's office for the same harassing conduct on multiple occasions.  It can thus reasonably be inferred that although Principal Daugherty was aware that whatever she was doing was not working, she nonetheless continued on the same course of action (or inaction) for some time.  To be sure, further action (referring the matter to law enforcement) was later taken.  But that does not mean any deliberate indifference on her part in the meantime could not give rise to Title IX liability.

3

NVUSD contends that the time period during which Annamaria was harassed was simply too short to establish deliberate indifference and that because school authorities eventually called the police, defendants' actions must be deemed reasonable.

The relatively short period of time in which the events giving rise to this action took place no doubt bears upon Annamaria's ability to prove a violation of Title IX.  First, the harassment must have occurred over a sufficient period of time to be pervasive.  Second, after the harassment became pervasive and defendants became aware of it, defendants' ineffective responses must have been repeated over a sufficient period of time that they became clearly unreasonable under the circumstances ─── assuming those responses were not clearly unreasonable at the outset.  But the gestation period for a Title IX violation is shorter when the alleged harassment and ineffective responses occur with relatively high frequency.  Here, the SAC alleges that the harassment occurred daily (and throughout each school day) and that ineffective

United States District Court

For the Northern District of California

responses were rendered on multiple occasions.  Under these circumstances, the court cannot say that it is a legal impossibility that a Title IX violation could have occurred in a period of approximately six or seven weeks.

Further, the fact that effective action was eventually taken does not absolve NVUSD of liability for a Title IX violation that occurred in the meantime.  Rather, "whether the school's belatedly stepped up efforts were 'too little, too late' is a question [of fact]."  <u>Theno v Tonganoxie Unif Sch Dist</u>, 377 F Supp 2d 952, 966 (D Kan 2005).

The factual record to be developed in this case might show that defendants' actions were not clearly unreasonable.  But the court cannot conclude that, construed in the light most favorable to Annamaria, the SAC does not allege deliberate indifference on the part of a school official empowered to take corrective action.  NVUSD's motion to dismiss Annamaria's Title IX claim must therefore be DENIED.


IV

*Eleventh Amendment*

Before proceeding to the remainder of Annamaria's claims and defendants' arguments for dismissing the same, it is appropriate first to address the effect of the Eleventh Amendment.

The Eleventh Amendment bars claims in federal court against non-consenting states and their agencies.  <u>Pennhurst State Sch & Hosp v Halderman</u>, 465 US 89, 100-02 (1984).  As a school district, NVUSD is a state agency for purposes of the Eleventh Amendment.  <u>Belanger v Madera Unif Sch Dist</u>, 963 F2d 248, 250-54

United States District Court

For the Northern District of California

(9th Cir 1992).  Further, "[t]he Eleventh Amendment bars suits against state officials in their official capacities when" as in this case, "the relief sought is retrospective or compensatory in nature * * *."  <u>Han v Department of Justice</u>, 45 F3d 333, 338 (9th Cir 2000).  Accordingly, defendants are correct that the Eleventh Amendment bars Annamaria's seventh claim, which arises under 42 USC § 1983, against NVUSD and the individual defendants in their official capacities.

        Although defendants have not clearly invoked the Eleventh Amendment against Annamaria's state law claims, the court finds it appropriate to address the issue *sua sponte*.  See <u>In re Jackson</u>, 184 F3d 1046, 1048 (9th Cir 1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte.").  The Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." <u>Cholla Ready Mix, Inc v Civish</u>, 382 F3d 969, 973 (9th Cir 2004).  The State of California has not consented to suit in federal court on Annamaria's tort claims.  See <u>Riggle v California</u>, 577 F2d 579, 585-86 (9th Cir 1978) (holding that the California Tort Claims Act, Cal Gov't Code § 810 et seq, does not "contain a waiver of immunity which extends further than the California state courts").  Nor is the court aware of any enactment or pronouncement whereby the State of California has consented to suit in federal court on Annamaria's claims arising under California statutory law.

        In sum, because they are barred by the Eleventh Amendment, Annamaria's second through twelfth claims against NVUSD

and the individual defendants in their official capacities are
DISMISSED.  See Cole v Oroville Union High Sch Dist, 228 F3d 1092,
1100 n 4 (9th Cir 2000) ("The district court correctly concluded it
did not have jurisdiction over the appellant's damage claims
against the District and District officials in their official
capacities, because California school districts are state agencies
and thus immune from damage suits under the Eleventh Amendment.").
Such dismissal is WITHOUT PREJUDICE to Annamaria's ability to file
in a court of competent jurisdiction.  See Freeman v Oakland Unif
Sch Dist, 179 F3d 846, 846-47 (9th Cir 1999).


V

*Section 1983*

Annamaria's seventh claim arises under 42 USC § 1983 and
alleges that defendants deprived Annamaria of (1) her right to be
free from gender discrimination in violation of Title IX and the
Equal Protection Clause of the Fourteenth Amendment and (2) her
right to be free from racial discrimination in violation the Equal
Protection Clause.  SAC ¶124.


A

The court first briefly addresses defendants' suggestion
that a heightened pleading standard applies to Annamaria's claims
against them in their individual capacities.  The Ninth Circuit has
expressly rejected the use of a heightened pleading standard in
§ 1983 claims.  See Galbraith v County of Santa Clara, 307 F3d
1119, 1125 (9th Cir 2002) (recognizing that Branch v Tunnel, 937
F2d 1382 (9th Cir 1991), was effectively overruled by Crawford-El v

United States District Court

For the Northern District of California

1  <u>Britton</u>, 523 US 574 (1998), and <u>Swierkiewicz v Sorema NA</u>, 534 US

2  506 (2002)).

3

4                                   B

5                        *Gender Discrimination*

6          Annamaria alleges that by allowing a hostile educational

7  environment to develop, the individual defendants deprived

8  Annamaria of her rights under the Fourteenth Amendment and Title IX

9  to be free from gender discrimination.  SAC ¶124.  The individual

10  defendants assert qualified immunity.

11          Qualified immunity shields state actors from liability

12  for civil damages "insofar as their conduct does not violate

13  clearly established statutory or constitutional rights of which a

14  reasonable person would have known."  <u>Harlow v Fitzgerald</u>, 457 US

15  800, 818 (1982).  At the pleadings stage, qualified immunity

16  analysis entails three steps.  First, the court must determine

17  whether, taken in the light most favorable to the plaintiff, the

18  facts alleged show a violation of the plaintiff's statutory or

19  constitutional rights.  <u>Saucier v Katz</u>, 533 US 194, 201 (2001).  If

20  a violation has been alleged, the court next determines whether the

21  right infringed was clearly established at the time of the alleged

22  violation.  Finally, the court assesses whether it would be clear

23  to a reasonable person in the defendant's position that her conduct

24  was unlawful in the situation she confronted, for even if the

25  defendant violated clearly established law, immunity is nonetheless

26  available if she made a reasonable mistake with regard to what the

27  law requires.  Id at 202, 205; see also <u>Frederick v Morse</u>, 439 F3d

28  1114, 1123 (9th Cir 2006) (characterizing this final inquiry as a

                                   14

discrete third step in qualified immunity analysis). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v Pelzer, 536 US 730, 739 (2002) (citing Anderson, 483 US at 640).

Accordingly, the court first addresses whether Annamaria's complaint alleges a violation of her rights under Title IX or the Fourteenth Amendment.

1

As an initial matter, the court notes that the Ninth Circuit has expressly declined to address whether school officials and employees can be sued under § 1983 for a violation of Title IX. See Doe v Petaluma City Sch Dist, 54 F3d 1447, 1449 (9th Cir 1995); see also Oona R-S ex rel Kate S v McCaffrey, 143 F3d 473, 475 (9th Cir 1998). Courts in this district, however, have concluded that school officials may be sued under § 1983 for violations of rights protected by Title IX. See Oona R-S ex rel Kate S v Santa Rosa City Schools, 890 F Supp 1452, 1459-62 (ND Cal 1995) (Henderson); Nicole M, 964 F Supp at 1379-81. As defendants have not challenged the viability of Annamaria's § 1983 claim on this basis, the undersigned perceives no need to depart from the well-reasoned conclusions of his colleagues.

Further, it is clear that deliberate indifference to peer sexual harassment can violate rights protected by the Equal Protection Clause and enforceable against school officials through § 1983. See Flores, 324 F3d 1135 (recognizing that deliberate

United States District Court

For the Northern District of California

15

United States District Court

For the Northern District of California

indifference permits a conclusion that defendants acted with an unconstitutional state of mind); <u>Murrell</u>, 186 F3d 1238, 1251 n 8 ("A state actor's acquiescence in sex discrimination is independently actionable under the Fourteenth Amendment regardless of the dictates of Title IX * * *"); <u>Nicole M</u>, 964 F Supp at 1383 ("Particularly in the context of sexual harassment, [a school principal]'s failure to act is significant because it may constitute evidence of her intent to discriminate on the basis of sex.") (citing <u>Bohen v City of East Chicago</u>, 799 F2d 1180, 1190 (7th Cir 1986) (Posner concurring) (suggesting that an equal protection claim may be sustained for an employer's complacency toward sexual harassment without a showing of differential treatment because "sexual harassment of men by women is extremely rare")); cf <u>Jackson v Birmingham Bd of Educ</u>, 125 S Ct 1497, 1504 (2005) (stating in the Title IX context that "deliberate indifference to sexual harassment of a student by another student squarely constitutes discrimination on the basis of sex").

As already discussed, the SAC alleges deliberate indifference on the part of Principal Daugherty sufficient to state a Title IX claim against NVUSD.  That conclusion also applies to the § 1983 claim against Principal Daugherty individually.

With regard to Mrs Kernberger, Annamaria told Mrs Kernberger that Gerardo and Oscar had touched her inappropriately and asked her if she wanted to "fuck" them, to which Mrs Kernberger responded "on several occasions" by instructing Annamaria to "ignore it."  SAC ¶38.  In their reply memorandum, defendants attempt to characterize Mrs Kernberger's instruction as a step calculated to end the harassment.  See Doc #40 (Reply) at 2.  The

United States District Court

For the Northern District of California

court disagrees with this characterization.  Mrs Kernberger's instruction was, in essence, no action at all.  To be sure, the SAC alleges that Mrs Kernberger later moved Annamaria to the front of the classroom and began sending the Gerardo and Oscar to the principal's office.  A more developed record might ultimately demonstrate that Mrs Kernberger was not deliberately indifferent in light of all the circumstances.  But construed in the light most favorable to Annamaria, the SAC alleges deliberate indifference on the part of Mrs Kernberger.

In contrast, the SAC does not allege that Mrs Myers delayed in sending Gerardo and Oscar to Principal Daugherty's office upon being made aware of their conduct toward Annamaria. Thus, the SAC cannot be read to allege that Mrs Myers ever consciously declined to take action when the need for action was indicated.  Read in the light most favorable to Annamaria, however, the SAC alleges that Mrs Myers mechanically repeated the step of sending Gerardo and Oscar to the principal's office, even after it would have become apparent that the boys' harassing conduct was continuing unabated.

The court is sensitive to the challenges classroom teachers face.  Further, teachers' authority to take disciplinary or other direct measures likely to curb persistent peer sexual harassment might be quite limited.  But teachers surely have the ability to ensure that school administrators are aware of peer harassment for which schools receiving federal funding are legally accountable.  In the normal course, sending harassers such as Gerardo and Oscar to the principal's office could reasonably be expected to communicate the problem to school administrators.  But

17

**United States District Court**

For the Northern District of California

when the circumstances are such that a reasonable teacher would seriously question whether school administrators appreciate the severity of a particular problem, it is incumbent upon that teacher to take additional steps to apprise school administrators of the situation.

Again construing the SAC in the light most favorable to Annamaria, the court concludes that the SAC alleges that Mrs Myers failed to take extra steps when their necessity was indicated.

### 2

"[T]he duty to take reasonable steps to remedy a known hostile environment created by a peer [was] clearly established" in the Ninth Circuit no later than 1998. <u>Oona R-S</u>, 143 F3d at 477 (holding "that the defendants [were] not entitled to immunity for their failure to take steps to remedy the hostile environment created by the male students in [plaintiff]'s class").

### 3

Finally, the court determines whether it would have been clear to a reasonable person in the defendants' position that their acts or omissions violated clearly established law. Because the SAC alleges that Principal Daugherty and Mrs Kernberger initially (but repeatedly) took essentially no action in response known harassment, the court cannot conclude at this juncture that they mistakenly but reasonably believed they were acting within the bounds of the law.

Significantly, however, the SAC does not allege inaction on the part of Mrs Myers. In light of all the circumstances, the

18

United States District Court

For the Northern District of California

court concludes that Mrs Myers could have reasonably believed that sending Gerardo and Oscar to the principal's office was an adequate response to Annamaria's complaints.  Accordingly, Mrs Myers is entitled to qualified immunity and Annamaria's seventh claim against Mrs Myers is accordingly DISMISSED.

B

*Racial Discrimination*

Annamaria argues that her racial discrimination claim is sufficient because she has alleged that she, Gerardo and Oscar are Hispanic while all the individual defendants are Caucasian.  Doc #39 (Opp) at 14.  Based on these allegations, Annamaria posits that it can be inferred "that the district's lack of adequate response [sic] and tolerance of the sexual harassment is due to racial discrimination, translated 'That's what Mexicans do.'"  Id at 15. This will not do.

"To state a claim under 42 USC § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  <u>Barren v Harrington</u>, 152 F3d 1193, 1194 (9th Cir 1998).  In the usual case, this requires a plaintiff to allege that similarly situated persons who are not in the same protected class as the plaintiff were treated differently.  See <u>Ventura Mobile Home Communities Owners Ass'n v City of San Buena Ventura</u>, 371 F3d 1046, 1055 (9th Cir 2004); <u>Lee v City of Los Angeles</u>, 250 F3d 668, 687 (9th Cir 2001); see also <u>Olmstead v L C ex rel Zimring</u>, 527 US 581, 614 (1999) (Kennedy concurring in

19

judgment) (stating that the "normal definition of discrimination" is "differential treatment"); <u>City of Cleburne v Cleburne Living Center</u>, 473 US 432, 439 (1985) (stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike").

The allegation that Annamaria is a member of a protected class alone is not sufficient to state a claim of discrimination. See <u>Sherman v Yakahi</u>, 549 F2d 1287, 1291-92 (9th Cir 1977) (holding that the allegation that plaintiff was Jewish and was the only person denied permanent employment was insufficient to state a claim of religious discrimination). Nor are the allegations that Annamaria and the individual defendants are members of different protected groups sufficient. See <u>Thornton v City of St Helens</u>, 425 F3d 1158, 1167 (9th Cir 2005) ("[T]he fact that Mrs Thornton is Native American and certain City council members and administrators are not, standing alone, does not mean that Defendants have discriminated on the basis of race."). Finally, the allegations that (1) Annamaria is a member of a protected class, (2) the individual defendants are members of a different class and (3) the individual defendants acted unreasonably do not cumulatively establish either a racially discriminatory intent or differential treatment and thus fail to state an equal protection claim. See <u>Bingham v City of Manhattan Beach</u>, 341 F3d 939, 948-49 (9th Cir 2003) (holding that an African-American plaintiff's allegations that he and the Caucasian police officer disagreed about the reasonableness of the traffic stop were insufficient to raise an inference of racial discrimination).

//

United States District Court

For the Northern District of California

20

**United States District Court**

For the Northern District of California

1   Again, Annamaria has alleged nothing more than that she

2  has a Spanish surname and is Hispanic while the individual

3  defendants are all Caucasian.  SAC ¶¶47, 53.  In the absence of an

4  allegation that defendants responded more favorably to similar acts

5  of peer harassment directed at students outside the protected group

6  of which Annamaria is a member, discriminatory intent cannot

7  reasonably be inferred from the allegations in the SAC.

8  Annamaria's claim for racial discrimination is therefore DISMISSED.

9  Further, it being clear that Annamaria does not plan to proceed on

10  a theory of disparate treatment, but rather a "That's what Mexicans

11  do" theory unrecognized by the law, such dismissal is WITH

12  PREJUDICE.

13

14                              IV

15                       *State Law Claims*

16

17                               A

18                       *Sexual Battery*

19      Annamaria's second claim alleges "sexual

20  battery/harassment."  SAC ¶82.  To state a claim of sexual battery,

21  a plaintiff must allege that (1) defendant intended to cause

22  "harmful or offensive" contact and (2) plaintiff batteree suffered

23  "sexually offensive contact."  Cal Civ Code § 1708.5; see also

24  Angie M v Superior Court, 37 Cal App 4th 1217, 1225 (1995).

25      Defendants argue that dismissal is required in the

26  absence of any allegation that any individual defendant actually

27  touched Annamaria.  Annamaria argues that the allegations that

28  defendants breached their duty to protect Annamaria from harms such

21

United States District Court

For the Northern District of California

as sexual battery while she was at school are sufficient to state a claim for sexual battery, relying primarily upon M W v Panama Buena Vista Union Sch Dist, 110 Cal App 4th, 508, 517 (2003).

As Annamaria correctly observes, Panama Buena holds that a school district has an "affirmative duty to take all reasonable steps to protect its students."  Id.  Panama Buena, however, did not approve of liability for sexual assault, but rather for the school's negligent failure to protect the student from a third party's sexual assault.  Id at 518.

An essential element of sexual battery is that the defendant touched the plaintiff in a "sexually offensive" manner. Annamaria's allegations that the individual defendants breached their duty to prevent Gerardo and Oscar from touching her does not establish that the district defendants sexually battered Annamaria are no substitute.  The failure to allege that any of the individual defendants themselves ever touched Annamaria is fatal to a claim of sexual battery.  Further, it is clear this deficiency cannot be remedied by amendment.  Accordingly, Annamaria's second claim is DISMISSED WITH PREJUDICE.


B

*California Education Code*

Annamaria's eleventh claim alleges that NVUSD and the individual defendants failed to discharged their statutory duties under California Education Code §§ 220 and 231.5.  Section 220 provides that "[n]o person shall be subjected to discrimination on the basis of sex * * * in any program or activity conducted by an educational institution."  Section 231.5 provides that "each

educational institution in the State of California shall have a
written policy on sexual harassment * * * [which] shall be
displayed in a prominent location * * * [and] shall be provided as
part of any orientation program conduct for new students."

Defendants argues that §§ 220 and 231.5 do not provide a
private right of action.  Doc #35 at 13.  NVUSD relies on Nicole M,
964 F Supp at 1390.  But significantly, Nicole M was decided before
California Education Code § 262.4 was enacted in 1998.  See Stats
1998, c 914 (AB 499) § 38.

Section 262.4 provides:  "This chapter may be enforced
through a civil action."  Other courts have concluded that § 262.4
affords a private right of action under California Education Code
without any requirement that administrative remedies be exhausted.
See C N v Wolf, 410 F Supp 2d 894, 903-04 (CD Cal 2005) (declining
to follow Nicole M and holding that § 262.4 "explicitly" provides a
private right of action under the California Education Code).  For
the reasons that follow, the undersigned disagrees with this
interpretation.

Section 262.4 is contained in Article 9 of the
California Education Code, which encompasses Education Code §§
260-262.4.  When read in conjunction with § 262.3, the language of
§ 262.4 becomes ambiguous.  Section 262.3(c) states that "[n]othing
in this chapter shall be construed to require an exhaustion of the
administrative complaint process before civil law remedies may be
pursued."  Next, § 262.3(d) declares that "[n]otwithstanding any
other provision of law, a person who alleges that * * * she is a
victim of discrimination may not seek civil remedies pursuant to
this section until at least 60 days have elapsed from the filing of

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

an appeal to the State Department of Education * * *." Although there is some tension between subsections (c) and (d) of § 262.3 inasmuch as the former explicitly eschews exhaustion of administrative remedies as a prerequisite to judicial remedies and the latter explicitly requires parties to pursue administrative remedies, this ambiguity is reconcilable: Although parties need not exhaust the administrative complaint process, they must at least pursue administrative remedies to the point of having filed an appeal with the California Department of Education and waiting 60 days. But the following textual wrinkle is not so easy to straighten out: Although on its face the statute requires parties to pursue administrative remedies only before seeking civil remedies pursuant to § 262.3, it is § 262.4, not § 262.3, that authorizes civil remedies.

A letter of legislative intent authored by the sponsor of Assembly Bill 499, which amended § 262.3 and added § 262.4, resolves this ambiguity:

> Prior to the passage of AB 499 (1997-98), the Education Code's prohibition of discrimination against students was enforceable through a civil action for legal and equitable relief. It was the legislature's express intent in enacting AB 499 to limit that private right of action under the Education Code, by requiring students to go through an administrative grievance process prior to the pursuit of civil remedies other than injunctive relief.

Letter from Assembly Member Keul (April 6, 1999) (published in the Assembly Daily Journal, 1998-1999 Regular Session, at 1381).

Generally, California courts do not consider the motive or understanding of individual legislators when construing the meaning of a statute. <u>Roberts v City of Palmdale</u>, 5 Cal 4th 363,

24

United States District Court

For the Northern District of California

377 (1993).  A letter of intent, however, can be considered where it evidences more than "merely the personal view of the proponent of the bill."  Id; see also In re Marriage of Bouquet, 16 Cal 3d 583, 589 (1976).  Such is the case here because a motion to print a letter in the Assembly Daily Journal "shall require a majority vote."  Assembly Rule 42(c), available at http://www.leginfo.ca.gov/rules/assembly_rules.html.

Accordingly, the court concludes that § 262.4 must be read with the limitations detailed in § 262.3 such that aggrieved parties may not pursue claims for damages in court "until at least 60 days have elapsed from the filing of an appeal to the State Department of Education."  The SAC alleges that Annamaria "has complied with the applicable tort claims statutes by filing government tort claims with" NVUSD, which were rejected on July 15, 2002.  SAC ¶62.  Because Annamaria has not pursued her administrative remedies to the point required by § 262.3(d), the court concludes that it lacks subject matter jurisdiction over her claim under the California Education Code.  Accordingly, Annamaria's eleventh claim is DISMISSED.


C

*Unruh Civil Rights Act*

Annamaria's twelfth claim alleges that NVUSD violated the Unruh Civil Rights Act (the "Unruh Act"), Cal Civ Code § 51 et seq. Section 51 provides:  "All persons * * * no matter what their sex * * * are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Section 51.5 provides:

**"No business establishment of any kind whatsoever shall discriminate against * * * any person in this state * * * on account of" sex.[2]  Section 52(a) makes the foregoing statutory rights enforceable through a civil action.**

**As an initial matter, it appears that California courts have yet to address specifically whether a school district is a "business establishment" within the meaning of the Unruh Act.  But see Ibister v Boys' Club of Santa Cruz, Inc, 40 Cal 3d 72, 79 (1985) (discussing the original version of the bill that became the Unruh Act, which included "schools" within its scope, and concluding that the California legislature intended to include all groups enumerated in the original bill).  Several federal courts have concluded that public schools are "business establishments" within the meaning of the Unruh Act.  See Nicole M, 964 F Supp at 1388; Doe v Petaluma City Sch Dist, 830 F Supp 1560, 1581-82 (ND Cal 1993); Sullivan v Vallejo City Unif Sch Dist, 731 F Supp 947, 952 (ED Cal 1990).  Defendants do not argue the contrary here.**

**Rather, defendants argue that sexual harassment is not actionable under the Unruh Act, relying exclusively upon Brown v Smith, 55 Cal App 4th 767 (1997).  The Unruh Act claim in Brown arose from repeated, offensive sexual advances toward the plaintiff by her landlord.  Plaintiff postulated "that the sexual harassment**

---

**[2]  The Unruh Act consists only of § 51.  See Stamps v Superior Court, 136 Cal App 4th 1441, 1449-52 (2006); Alch v Superior Court, 122 Cal App 4th 339, 395 (2004); Gatto v County of Sonoma, 98 Cal App 4th 744, 757-58 (2002).  Thus, § 51.5 is not technically part of the Unruh Act.  But both provisions are enforceable through § 52(a) and any distinction between the two sections is not implicated by the present motion.  "To avoid any confusion, all references to the Unruh Act in this opinion mean California Civil Code § 51."  Goldman v Standard Ins Co, 341 F3d 1023, 1027 n 4 (9th Cir 2003).**

United States District Court

For the Northern District of California

* * * she endured amounted to denial of ongoing access to her housing accommodations on the basis of her sex, since she was deprived of the quiet enjoyment of her home." Id at 786. In the court's view, however, plaintiff had "effectively alleged an intentional tort in the guise of a statutory [Unruh Act] cause of action." Id at 787. The court was guided by the California Supreme Court's recognition that the California legislature intended the Unruh Act to encompass only the categories of discrimination enumerated therein and admonition that expansion of those categories should be consistent with that intent. See id (relying upon <u>Harris v Capital Growth Investors XIV</u>, 52 Cal 3d 1142 (1991) (holding that the Unruh Act does not encompass economic discrimination and discrimination based on a theory of disparate impact)). The <u>Brown</u> court concluded that "expand[ing] the protected categories in the [Unruh] Act to include victims of sexual harassment" would be inconsistent with legislative intent.

The court's conclusion was reinforced by California Civil Code § 51.9, which imposes liability for sexual harassment in business, service and professional relationships, and which the California legislature understood as creating a cause of action where none existed before. Id at 787-88. At the time of the <u>Brown</u> decision, § 51.9 implicitly defined "sexual harassment" as "sexual advances, solicitations, sexual requests, or demands for sexual compliance * * * that [are] unwelcome and persistent or severe." See Cal Civ Code § 51.9(a)(2).

Given the facts of the case and the court's reliance upon § 51.9, <u>Brown</u> stands for nothing more than the proposition that sexual harassment in the form of unwanted sexual advances are not

United States District Court

For the Northern District of California

1   actionable under the Unruh Act.  If the SAC had alleged that

2   defendants themselves had harassed Annamaria with unwelcome sexual

3   comments or conduct, defendants' reliance upon <u>Brown</u> would be

4   better placed.  But defendants are not alleged to have engaged in

5   sexual harassment; rather, the court construes Annamaria's Unruh

6   Act claim to allege that defendants' "inadequate response to

7   complaints of sexual harassment," <u>Nicole M</u>, 964 F Supp at 1389,

8   constituted intentional discrimination on the basis of sex.  <u>Brown</u>

9   is thus distinguishable and therefore does not control.

10      Defendants have not presented any other argument why the

11  court should not follow the lead of other federal courts that have

12  found a cognizable Unruh Act claim on similar allegations, see

13  <u>Nicole M</u>, 964 F Supp at 1388-89; <u>Davison ex rel Sims v Santa</u>

14  <u>Barbara High Sch Dist</u>, 48 F Supp 2d 1225, 1232-33 (CD Cal 1998)

15  (following <u>Nicole M</u>).  Accordingly, the individual defendants'

16  motion to dismiss Annamaria's twelfth claim is DENIED.

17

18                              D

19                      *Negligence Claims*

20      Annamaria asserts an assortment of claims sounding in

21  negligence:  failure to protect (third claim), negligent

22  supervision (fourth claim), negligent placement (fifth claim),

23  negligent failure to protect (sixth claim), general negligence

24  (ninth claim) and negligent infliction of emotional distress (tenth

25  claim).

26      Defendants present several arguments for dismissing the

27  negligence-based claims:  First, defendants contend they cannot be

28  liable in negligence absent a statutory basis.  Next, defendants

contend they are entitled to governmental immunity because they were performing discretionary functions.  Further, defendants appear to deny the existence of any duty to protect Annamaria from Gerardo and Oscar.  Finally, defendants maintain that these claims are duplicative of each other.

1

"[A] public employee is liable for injury caused by his act or omission to the same extent as a private person," Cal Gov't Code § 820, except that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him [or her], whether or not such discretion is abused," id § 820.2.  Thus, the individual defendants can be held liable only for injuries caused by non-discretionary acts of the individual defendants but are immune from suit for acts or omissions within the individual defendants' discretion.

To the extent defendants maintain they cannot be liable in tort absent some additional statutory basis, defendants misunderstand the above-quoted provisions of the California Tort Claims Act, Cal Gov't Code § 810 et seq.  "Under the California Tort Claims Act, public employees are liable for their torts unless a statute provides otherwise."  Barner v Leeds, 24 Cal 4th 676, 682 (2000) (citation omitted) (emphasis added).  Contrary to defendants' suggestion, then, there is a statutory basis for liability based on common law theories.

//

//

United States District Court

For the Northern District of California

**2**

Defendants argue they are immune from suit because the acts or omissions challenged in the SAC were discretionary within the meaning of California Government Code § 820.2.

"[N]ot all acts requiring a public employee to choose among alternatives entail the use of 'discretion' within the meaning of [§ 820.2]." <u>Barner</u>, 24 Cal 4th at 684-85.  Rather, "immunity applies only to <u>deliberate and considered</u> policy decisions, in which a 'conscious balancing of risks and advantages took place.'"  <u>Caldwell v Montoya</u>, 10 Cal 4th 972, 981 (1995) (quoting <u>Johnson v California</u>, 69 Cal 2d 782, 795 (1968)) (alterations omitted).

**a**

Principal Daugherty's decision to take a particular (or no) disciplinary action involved the exercise of discretion within the meaning of § 820.2.  See <u>Kemmerer v County of Fresno</u>, 200 Cal App 3d 1426, 1437-39 (1988) (holding that county officials' decision to institute disciplinary proceedings against a civil service employee "was a policy decision involving the exercise of discretion" entitling them to immunity under § 820.2); see also <u>Nicole M</u>, 964 F Supp at 1389-90 (relying upon <u>Kemmerer</u> and concluding that "[d]ecisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts"); <u>Petaluma</u>, 830 F Supp at 1583 (relying upon <u>Kemmerer</u> and holding that high school counselor was entitled to

United States District Court

For the Northern District of California

immunity based on his alleged failure to respond adequately to known peer sexual harassment).  It is not appear that this conclusion, by itself, requires dismissal of any claims against Principal Daugherty.  But Principal Daugherty's alleged failure to take disciplinary measures to curb the harassment is clearly one factual predicate for Annamaria's claims.  This cannot be a basis for liability under any common law theory in this suit.

b

Annamaria's fifth claim for negligent placement alleges that defendants breached their duty to place Annamaria in an appropriate class.  The decision where to place a student new to public education clearly involves the balancing of various considerations such as the student's social needs and academic preparedness.  Such balancing necessarily involves the exercise of discretion and, accordingly, cannot be a predicate for liability. Cf Thompson v County of Alameda, 27 Cal 3d 741, 748-49 (1980) (holding that county's selection of a custodian for juvenile offender was a discretionary act within the meaning of § 820.2); Becerra v County of Santa Cruz, 68 Cal App 4th 1450, 1462-64 (1999) (holding that social workers' selection of a foster home for a dependent child was a discretionary decision within meaning of § 820.2); Ronald S v County of San Diego, 16 Cal App 4th 887, 897 (1993) ("The nature of the investigation to be conducted and the ultimate determination of suitability of adoptive parents bear the hallmarks of uniquely discretionary activity.").

Similarly, to the extent Annamaria's fifth claim purports to predicate liability on the decision to entrust Mrs Kernberger

31

United States District Court

For the Northern District of California

with a classroom that she was allegedly "unable to control," SAC ¶108, that decision also involved the exercise of discretion for which the district defendants are immune from liability. Because all the actions giving rise to Annamaria's fifth claim are immunized, that claim is DISMISSED WITH PREJUDICE.

c

California case law makes clear that defendants are not entitled to immunity for their alleged failures to protect or warn. See <u>Lopez v S Cal Rapid Transit Dist</u>, 40 Cal 3d 780, 793-95 (1985) (denying immunity to public common carrier for alleged failure of bus driver to protect passenger); <u>Peterson v San Francisco Commmunity College Dist</u>, 36 Cal 3d 799, 815 (1984) (denying immunity to community college district and its agents for alleged failure to warn student of known danger); <u>Tarasoff v Regents of Univ of California</u>, 17 Cal 3d 425, 444-47 (1976) (denying therapists immunity for alleged failure to warn decedent of danger); <u>Johnson</u>, 69 Cal 2d at 793-97 (denying immunity to State of California for parole officer's alleged failure to warn foster family of foster child's dangerous propensities).

With regard to the alleged failure of individual defendants adequately to train or supervise the teachers, due to the lack of briefing on the issue and the apparent lack of California case law addressing the question, the court declines at this time to grant immunity for these alleged instances of malfeasance. If at a later point in these proceedings defendants show that training and supervision of teachers at Redwood entailed discretion within the meaning of § 820.2, the court will grant

United States District Court

For the Northern District of California

1   immunity as appropriate.

2

3                                    3

4         Defendants suggest in passing that they did not owe a

5   duty to protect Annamaria from Gerardo and Oscar.  See MTD at 8-9.

6         Although "neither school districts nor their employees

7   are the insurers of the safety of their students," they do owe "a

8   duty to use the degree of care which a person of ordinary prudence,

9   charged with comparable duties, would exercise in the same

10  circumstances."  Leger v Stockton Unif Sch Dist, 202 Cal App 3d

11  1448, 1459 (1988) (citing Dailey v Los Angeles Unif Sch Dist, 2 Cal

12  3d 741, 747 (1970)).  In general, one owes no duty to warn of or

13  control the conduct of another.  "Such a duty may arise, however,

14  if (a) a special relation exists between the actor and the third

15  person which imposes a duty upon the actor to control the third

16  person's conduct, or (b) a special relation exists between the

17  actor and the other which gives the other a right to protection."

18  Id at 1458 (quoting Davidson v City of Westminster, 32 Cal 3d 197,

19  203 (1982) (quoting Restatement (Second) of Torts § 315 (1965)))

20  (internal citations and quotations omitted).

21        "A special relationship is formed between a school

22  district and its students resulting in the imposition of an

23  affirmative duty on the school district to take all reasonable

24  steps to protect its students.  This affirmative duty arises, in

25  part, based on the compulsory nature of education."  Panama Buena,

26  110 Cal App 4th at 517.  But this special relationship does not by

27  itself impose on defendants a duty to protect Annamaria from sexual

28  battery by Gerardo and Oscar, for "[s]tudents are not at risk

                                    33

United States District Court

For the Northern District of California

merely because they are at school." Panama Buena, 110 Cal App 4th at 519.  Rather, defendants' duty to protect Annamaria from the particular harm alleged depends on whether that harm was reasonably foreseeable."  Id at 518; Leger, 202 Cal App 3d at 1459.

The SAC alleges that defendants knew or should have known that Gerardo and Oscar "were engaging in similar acts in class on numerous occasions" and "were a hazard to fellow students."  SAC ¶¶91-92.  These allegations are sufficient to allege a duty to warn and/or protect Annamaria from Gerardo and Oscar.

Finally, contrary to defendants' contention, the SAC sufficiently alleges breach and proximate causation.  See, e g, ¶¶93-95.


4

Defendants move to dismiss Annamaria's fourth, sixth, ninth and tenth claims on the ground that they are duplicative of her third claim, which the court construes as a motion to strike these claims as redundant pursuant to FRCP 12(f).  Because it is readily apparent that Annamaria's ninth claim (general negligence) adds nothing to the SAC, defendants' motion to strike Annamaria's ninth claim is GRANTED.  The court declines defendants' invitation to groom the pleadings any further.


E

*Intentional Infliction of Emotional Distress*

Annamaria's eighth claim alleges intentional infliction of emotional distress (IIED).  SAC ¶127.  "The elements of [IIED] are:  (1) extreme and outrageous conduct by the defendant with the

34

United States District Court

For the Northern District of California

intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation fo the emotional distress by the defendant's outrageous conduct." <u>Christensen v Superior Court</u>, 54 Cal 3d 868, 903 (1991) (internal quotations omitted).  Further, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  Id.

Defendants maintain that their conduct was not extreme and outrageous.  "The standard set for measuring outrageous conduct indicates the qualifying conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  <u>Davidson v City of Westminster</u>, 32 Cal 3d 197, 209 (1982).

The court first notes that immunity for defendants' decision to place (or recommend placing) Annamaria in the so-called "special classes" extends to this claim, as does immunity for Principal Daugherty's alleged failure to take adequate disciplinary action.  See *supra* IV(D)(2).  The only remaining averments that could plausibly support an IIED claim against Principal Daugherty are the allegations that (1) she repeatedly telephoned Antoinette to demand that Annamaria return to school, insinuating that it was unlawful for Annamaria to not attend school and (2) she did not allow Annamaria to attend the final school dance, telling Annamaria that she was "unwelcome."  SAC ¶¶54-55, 113-14.

//

United States District Court

For the Northern District of California

Although defendants did not so argue, telephone calls to Antoinette cannot give rise to an IIED claim for Annamaria because the conduct was neither directed at Annamaria nor did it occur in her presence, physical or telephonic.  See Christensen, 54 Cal 3d at 902-06; see also Ochoa v Superior Court, 39 Cal 3d 159, 165 n 5 (1985) (holding that parents could not state IIED claim based on conduct directed at their child).  In any event, it simply is not beyond the realm of civil decency for a school principal sternly to demand the attendance of an enrolled student.

With regard to the school dance, the court first notes that, although the SAC does not specifically so allege, the allegations suggest that Annamaria was no longer attending Redwood. See SAC ¶113 (alleging that Principal Daugherty would not let Annamaria attend the dance "either as an independent study student of [Redwood] or as a guest of Annamaria's closest friends who attended [Redwood]").  The court further notes that the parties have not briefed whether the decision not to allow Annamaria attend the dance was discretionary within the meaning of California Government Code § 820.2.  In any event, given Annamaria's young age and connection with Redwood, the court cannot conclude at this juncture that refusing to allow Annamaria to attend the dance and telling her she was "unwelcome" could not prove to have been extreme or outrageous.  Whether this proves to be so will depend upon the particulars of the communications between Annamaria and Principal Daugherty.

Neither Mrs Myers' alleged conduct (sending Gerardo and Oscar to Principal Daugherty's office) nor Mrs Kernberger's alleged conduct (initially instructing Annamaria to ignore Gerardo and

Oscar and later sending the boys to the principal's office) is extreme and outrageous.

The SAC alleges no facts indicating that Superintendent Brown directed any action toward Annamaria, much less action that was extreme or outrageous with intent to cause emotional distress.

Annamaria's eighth claim is DISMISSED as to defendants Myers, Kernberger and Brown.


V

*Motion to Strike*

Defendants move to strike all claims against defendants Goldberg and Chase based on their limited involvement in the events giving rise to this action and the fact that the SAC does not pray for relief against these two defendants. Annamaria appears to concede that Goldberg and Chase are subjects of the SAC only to the extent they "were involved in making the decision to place [Annamaria] in a class that was neither appropriate for her skill level nor safe for her personal well being." Opp at 21. Because the court has concluded that Annamaria's claim for negligent placement should be dismissed, the court further concludes that all claims against defendants Goldberg and Chase should be DISMISSED.

Defendants also move to strike Annamaria's prayer for punitive damages. "It is well established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." Morgan v Woessner, 997 F2d 1244, 1255 (9th Cir 1993) (quotations omitted); see also generally Dang v Cross, 422 F3d 800

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(9th Cir 2005).  Dismissal of all state law claims against NVUSD moots defendants' argument that punitive damages cannot be recovered against a public entity pursuant to California Government Code § 818.  Annamaria cites no authority for the proposition that a state actor must be acting outside the scope of her employment in order to be sued in her individual capacity.

Annamaria's motion to strike the prayer for punitive damages is DENIED.

VII

In sum, defendants' motion is GRANTED IN PART and DENIED IN PART as follows:  Annamaria's first claim (Title IX) is DISMISSED WITH PREJUDICE as to the individual defendants. Annamaria's second through twelfth claims, inasmuch as they are asserted against NVUSD and the individual defendants in their official capacities, are jurisdictionally barred by the Eleventh Amendment and are accordingly DISMISSED as to NVUSD and the individual defendants in their official capacities WITHOUT PREJUDICE to Annamaria's ability to assert these claims in a court of competent jurisdiction.  Defendant Myers is entitled to qualified immunity on Annamaria's § 1983 claim; accordingly, Annamaria's seventh claim against Mrs Myers is DISMISSED WITH PREJUDICE.  As to all individual defendants named in their individual capacities, Annamaria's claim for racial discrimination is DISMISSED WITH PREJUDICE; Annamaria's second, fifth and tenth claims (sexual battery, negligent placement and violation of the California Education Code, respectively) are DISMISSED WITH PREJUDICE; and Annamaria's ninth claim (general negligence) is

38

STRICKEN as redundant.  Annamaria's eighth claim is DISMISSED WITH

PREJUDICE as to defendants Myers, Kernberger and Brown.  Finally,

any remaining claims against defendants Goldberg and Chase are

DISMISSED WITH PREJUDICE.

Annamaria may file an amended pleading consistent with

this order within thirty days of the filing of this order.


SO ORDERED.


_____

VAUGHN R WALKER

United States District Chief Judge